UNITED STATES *v.* STRAUSS IMPORT CORP. (No. 4274)[1]

United States Court of Customs and Patent Appeals, February 5, 1940

*Webster J. Oliver,* Assistant Attorney General (*Joseph F. Donohue* and *Daniel G. McGrath,* special attorneys, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument December 5, 1939, by Mr. McGrath and Mr. Bevans]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain slide fasteners, imported at the port of New York, to be properly marked so as to indicate the country of their origin within the purview of section 304 of the Tariff Act of 1930, as amended by section 3 of the Customs Administrative Act of 1938.

The statute, so far as pertinent, reads:

SEC. 304. MARKING OF IMPORTED ARTICLES AND CONTAINERS.

(a) *Marking of Articles.*—Except as hereinafter provided, *every article of foreign origin* (or its container, as provided in subsection (b) hereof) *imported into the United States* shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner *as to indicate to an ultimate purchaser in the United States* the English name of the *country of origin of the article.* The Secretary of the Treasury may by regulations—

(1) Determine the character of words and phrases or abbreviations thereof which shall be acceptable as indicating the country of origin and prescribe any

---
[1] C. A. D. 99.

reasonable method of marking, whether by printing, stenciling, stamping, branding, labeling, or by any other reasonable method, and a conspicuous place on the article (or container) where the marking shall appear;

(2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article or as to the origin of any other article with which such imported article is usually *combined* subsequent to importation but before delivery to an ultimate purchaser;

\* \* \* \* \* \* \*

(e) *Penalties.*—If any person shall, with intent to conceal the information given thereby or contained therein, deface, destroy, remove, alter, cover, obscure, or obliterate any mark required under the provisions of this Act, he shall, upon conviction, be fined not more than $5,000 or imprisoned not more than one year, or both. [Italics ours.]

On the trial below, samples of articles like those here involved, except as to length, were introduced in evidence as Collective Exhibits Nos. 1 and 2.

Each slide fastener, as stated in substance by the trial court, consists of two pieces of tape having metal teeth attached to one edge of each tape. The tapes are permanently fastened together at approximately 1 inch from one end thereof by a metal closure, and the teeth on the edges of the tapes form parallel rows. A sliding unit, having a metal tab attached thereto, is locked into the metal teeth, and is so arranged that when it is drawn in one direction by means of the tab the teeth attached to the two pieces of tape lock together, and when it is drawn in the opposite direction the teeth separate.

It appears from the record that the involved articles are used as closures in the place of buttons, hooks and eyes, snap fasteners, and other forms of closing devices, on dresses, blouses, other articles of wearing apparel, pocketbooks, handbags, tobacco pouches, and various other articles to which they are sewed and permanently attached.

Appellee's witness Lester Strauss, president of the appellee corporation, testified that his company sold about 75 per centum of the slide fasteners imported by it to manufacturers, and about 25 per centum to stores to be sold at retail.

Another witness for appellee, A. W. Walter, testified that he was vice-president of the J. M. Macdonald Import Co., 230 Fifth Avenue, New York; that his company imported slide fasteners; and that about 90 per centum of its imported slide fasteners was sold to manufacturers, and about 10 per centum to stores to be sold at retail.

It appears from the record that, at the time of their importation, the involved articles were marked with the word "Japan" to indicate the country of their origin; that they were marked, as stated in the trial court's decision:

in bold letters stamped or printed at the end of one of the pieces of tape on each article on the side opposite the metal tab, referred to in the testimony as "the

back of the fastener." The tape upon which the marking appears extends about three-quarters of an inch beyond the metal closure at the end of the series of teeth and the word "Japan" covers more than half of this extension of the tape;

and that the protest in the instant case was directed to the refusal of the collector to deliver the involved articles to the importer until they were marked with the name of the country of their origin in a conspicuous place where, as stated by the collector in his answer to the protest:

the marking is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by the treatment or use made of the article before it reaches the ultimate purchaser.

The collector's answer also contains the statement that "The Appraiser reported the fasteners were marked on the tape 'Japan,'" and that this *marking was on the lowest part of the tape and was not accepted as a satisfactory marking* under" the provisions of section 304, *supra*. [Italics ours.] It also appears from the record that, in most instances, the manufacturer, in attaching slide fasteners like those here involved to other articles, manipulates that portion of the tape on which the word "Japan" appears so that the word "Japan" is covered and obscured.

That the involved slide fasteners are mere material to be used as closures in articles manufactured in the United States and, when so used, are not merely combined with such articles but, on the contrary, become integral, constituent, and component parts thereof, is not questioned here by counsel for the Government. Nor is it questioned by counsel that at the time of their importation the involved slide fasteners were legibly, indelibly, and permanently marked in a conspicuous place (so long as they remained in their imported condition) with the name of the country of their origin (Japan). It is argued by counsel, however, that, within the purview of section 304 (a), *supra*, the *ultimate purchaser of the imported articles* is not the purchaser of such articles in their imported condition, but, on the contrary, is the retail purchaser of *articles manufactured in the United States* of which the imported articles are integral, constituent, and component parts, and that as the involved articles were so marked that, when used for their intended purpose, the name of the country of their origin is covered and obscured, they were not marked as required by the provisions of the statute.

We are unable to concur in the views urged upon us by counsel for the Government.

The issues in the instant case are similar to the issues determined by this court in the case of *United States* v. *Gibson-Thomsen Co., Inc.*, Customs Appeal No. 4255, 27 C. C. P. A. (Customs) 267, C. A. D. 98, decided concurrently herewith. On the authority of our decision in that case, the judgment is *affirmed*.